IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| STEVEN JAKOBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:09-CV-461-P (BF) |
| | ) |
| DALLAS COUNTY, TEXAS, | ) |
| | ) |
| Defendant. | ) |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case was referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 634(b) (doc. 13). Defendant Dallas County's Motion for Summary Judgment (doc. 30) is before the Court for Findings, Conclusions, and Recommendation. The time for Plaintiff to respond to the Motion has expired, and Plaintiff has failed to file a response. After consideration of the entire record, the Court recommends that the District Court grant Defendant's Motion for Summary Judgment in its entirety.

Plaintiff is an inmate at the Sanchez Unit in El Paso, Texas and is proceeding *pro se*. The Court must construe the allegations in the complaint liberally. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). The terms of 28 U.S.C. § 1746 govern verification of an unsworn complaint. A plaintiff may declare under penalty of perjury that the factual allegations contained in the pleading are true and correct. *See* 28 U.S.C § 1746. The factual allegations of the verified complaint are endowed with the evidentiary force of an affidavit. *Id.* Plaintiff's answers to the United States Magistrate Judge's questionnaire are likewise endowed with the evidentiary force of an affidavit because they are verified under penalty of perjury. *See id.* When a *pro se* plaintiff properly executes a complaint

or other pleading which calls for a declaration in conformity with 28 U.S.C § 1746, the plaintiff's statements are transformed from mere allegations of a pleading into specific facts as if they were in an evidentiary affidavit. *Searcy v. Cooper*, 2002 WL 535058, *3 (N.D. Tex. 2002), (quoting *McNeal v. Macht*, 763 F. Supp. 1458, 1461 (E.D. Wis. 1991) (citing *Murrell v. Bennett*, 615 F.2d 306, 310 & n. 5 (5th Cir. 1980))). Therefore, a plaintiff's failure to proffer evidentiary materials directly in opposition to a defendant's motion does not mandate the entry of summary judgment in favor of the defendant. *Id*.

Plaintiff has filed one verified complaint as well as answers to the Magistrate Judge's questionnaire. Plaintiff has also filed an unverified Amended Complaint. In this case, the Court will exercise its discretion to consider Plaintiff's verified complaint and answers to the questionnaire as competent summary judgment proof. *See Skotak v. Tenneco Resins, Inc.*, 935 F.2d 909, 915 N.7 (5th Cir. 1992); *Bookman v. Shubzda*, 945 F.Supp. 999, 1003 (N.D. Tex. 1996) (Fitzwater, J.).

## Background

Plaintiff Steven Jakobe ("Plaintiff" or "Jakobe") was a pretrial detainee at the Dallas County Jail (the "Jail") from January to July of 2008. Plaintiff sues Defendant Dallas County ("Defendant or the "County") under 42 U.S.C. § 1983, alleging a federal civil rights claim under the 8th and 14th Amendments. Specifically, he claims his constitutional rights to medical care and safe conditions of confinement were violated because it has become customary at the Jail to (1) disregard inmates' medical needs and (2) not clean the infirmary properly. (Am. Compl. 1-2.) Defendant contends that summary judgment is proper because the evidence in the record fails to raise a genuine issue of material fact as to whether: (1) any Dallas County employee denied Jakobe any constitutional right; (2) Jakobe suffered any injury proximately cause by such denial; and (3) the County adopted or maintained a

policy or practice that was the direct cause of any denial of Jakobe's constitutional rights.

## Undisputed Facts

Plaintiff was booked into the Dallas County Jail on January 22, 2008 and was seen by a nurse that day. (Def. App. 2.) Jakobe described his medical history, which included a history of high blood pressure, bone disease, and a seizure that had occurred two months prior. (*Id.*) He told the nurse he currently was taking medication for hypertension and allergies. (Def. App. 3.) The nurse ordered Jakobe's vitals to be taken twice a day. (*Id.*) The nurse also ordered that Jackobe receive high blood pressure medications every day. *Id.* At that time, Jakobe did not identify any medication he was taking for seizures. (*See* Def. App. 2-3.) The nurse recommended that a physician follow up with Jakobe in seven to fourteen days. (Def. App. 3.) On January 26, Jakobe filled out a "Sick Call Request," complaining that he was not receiving blood pressure or allergy medication and that he had athlete's foot. (Def. App. 92.)

Jackobe saw a doctor in the Jail's Clinic ("Clinic") on January 29, seven days after his book-in. (Def. App. 60.) Jakobe then complained that he had a history of hypertension but that he was not receiving his blood pressure medication. (*Id.*) Due to elevated blood pressure, Jakobe received one Clonidine .02 mg at that time. (*Id.*) The doctor prescribed "Lisinopril 40, HCTZ 25" for high blood pressure and ordered that Jakobe's blood pressure be monitored. (*Id.*) He also prescribed Claritin and Nasonex for seasonal allergies and scheduled a follow-up visit for the next day. (*Id.*) Again, Jakobe said nothing about seizure medications at that time. (*See id.*) The Clinic saw Jakobe the next day as ordered. (Def. App. 59.)

On February 1, Plaintiff began receiving his blood pressure medication. (Def. App. 436.) He received all medication prescribed to him every day between February 1 and February 20, with the

3

exception of February 13.[1] (Def. App. 417-36.) During this time, Jakobe filled out a variety of Sick Call Requests. These consisted of complaints for foot fungus and allergies and a request to see a "psych dr."(Def. App. 134-38.) In response to these requests he received foot cream and allergy medicine. (Def. App. 136-138.)

At approximately 11:45 p.m. on February 20, 2008, the control center for the area where Jakobe was housed received a call that Jakobe had fallen from the top bunk in his cell. (Def. App. 528.) Upon arrival, the officers found Jakobe lying on the floor unresponsive. (*Id.*) An ambulance arrived at 12:00 a.m. and transported Jakobe to Parkland Memorial Hospital ("Parkland"). (*Id.*)

Jakobe returned to the Jail on March 3, 2008. (Def. App. 57.) Jakobe had fractured his back and had been placed in a "halo vest and ring," which was to remain in place at all times. (*Id.*) A family nurse practitioner saw Jakobe that day and noted Jakobe's February 20 injuries and a reported history of hypertension and seizure disorder. (Def. App. 181.) The Clinic's plan of action included housing in the infirmary, pain medication, vitamins and nutritional supplements, neuro checks every shift, and wound care instructions. (*Id.*) He was to return to the Neurosurgery Clinic in one month. (*Id.*)

A doctor at the Clinic saw Jakobe the next day, March 4. (Def. App. 51-53.) During that visit, Jakobe told the doctor that he wished to be evaluated for a seizure disorder. (Def. App. 51.) The doctor ordered "get brain EEG ordered today - refer to neurology clinic." (Def. App. 53.) He also sent notice that Jakobe needed an appointment for a "Brain EEG" appointment at the Parkland neurology clinic. (Def. App. 76, 499.)

On two occasions, Jakobe complained about his halo becoming loose. (Def. App. 120-27.) Both times, he was taken to the Emergency Room at Parkland and seen by neurosurgeons. (*Id.*) Jakobe returned to Parkland for a follow-up appointment with neurosurgery on April 8, 2008. (Def. App. 117-

---

[1] There are no prescription administration records for February 13, 2010.

18.)

On April 17, Jakobe was found lying on his bunk, unconscious. (Def. App. 63.) An ambulance transported him to Parkland, and he returned to the Jail later that day. (Def. App. 63-64.) Upon his return, Jakobe saw a nurse who noted "possible seizure" and "continue with Dilantin per MD order." (Def. App. 64.) The Clinic saw Jakobe the next day, and Jakobe informed the doctor that "he was on seizure meds but his private doctor in the real world stopped it." (Def. App. 35.) The doctor then ordered lab work to determine whether Jakobe had a seizure disorder. (Def. App. 37.) He also ordered Jakobe to continue on anti-epileptic medication. (Def. App. 37.)

Jakobe received anti-epileptic medication on a daily basis beginning April 18, 2008. (Def. App. 161-310.) From April 18 until the time Jakobe was transferred to the Texas Department of Criminal Justice on or about July 1, 2008, Jakobe was seen at the Clinic nine times. (Def. App. 4-38.) During his time in the infirmary, Jakobe contracted two Staph infections. (U.S.M.J.'s Quest. Ans. 5.)

**Disputed Facts**

Plaintiff contends that he was denied pain medication on a regular basis. (U.S.M.J.'s Quest. Ans. 5) He relies solely on his verified complaint and answers to the questionnaire to prove this fact. Defendant contends that Jakobe was regularly and routinely given medication for pain. (Def. Mot. for Sum. J. 4.) Jackobe's medical records show that he requested more pain medication on March 22, March 25, April 4, April 16, April 28, May 31, and June 7. (Def. App. 80-88.) Prescription records show medical personnel gave him pain medication on the schedule ordered by the Jail's doctor, except for the dates of March 5 and April 2. (Def. App. 341, 402.) Plaintiff claims that on March 25, a doctor at Parkland raised his prescription from 2 pills, 3 times a day to 2 pills, 4 times a day. (U.S.M.J.'s Quest. Ans. 6.) However, when he requested more pain medication at the Jail, he was told he could not receive the pills 4 times a day. (*Id.*)

5

## **Standard of Review**

Summary judgment is appropriate when the pleadings and the evidence show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986); *Melton v. Teachers Ins. & Annuity Assoc. of Am.*, 114 F.3d 557, 559 (5th Cir. 1997). The applicable substantive law identifies those facts that are material, and only disputes about material facts will preclude the granting of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). There is a genuine issue of fact if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Society of Fin. Examiners v. Nat'l Ass'n of Certified Fraud Examiners, Inc.,* 41 F.3d 223, 226 (5th Cir. 1995).

The moving party bears the initial burden of showing that there is no genuine issue of fact for trial. *National Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 712 (5th Cir. 1994). Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing an absence of evidence in support of the nonmoving party's case. *Celotex*, 477 U.S. at 325. Once a properly supported motion for summary judgment is presented, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Elliott v. Lynn*, 38 F.3d 188, 190 (5th Cir. 1994) (citing *Anderson*, 447 U.S. at 249). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The Court will consider the record in the light most favorable to Plaintiff. *Taita Chem. Co. v. Westlake Styrene Corp.,* 246 F.3d 377, 385 (5th Cir. 2001). As long as there

appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson*, 477 U.S. at 250. However, a failure on the part of the nonmoving party to offer proof concerning an essential element of his case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists. *Adams v. Travelers Indemnity Co.*, 465 F.3d 156, 164 (5th Cir. 2006).

## Analysis

42 U.S.C. § 1983 offers no respondeat superior liability. For a governmental entity such as county to be liable for the misconduct of one of it's employee's, the governmental entity must have "an official policy, practice, or custom" which could subject it to § 1983 liability for an injury, and the official must be acting pursuant to that policy, practice, or custom. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-94 (1978). Second, the plaintiff must link the official policy to the constitutional violation that directly caused the injury. *Id.* Finally, the official policy must reflect the governmental entity's deliberate indifference to that injury. *Hare v. City of Corinth*, 74 f.3d 633, 649 n.4 (5th Cir. 1996) (en banc) (citing *Farmer v. Brennan*, 511 U.S. 825, 841 (1994)). The plaintiff must specifically describe the policy or custom and its relationship to the underlying constitutional violation; moreover, the description cannot be conclusory but must contain specific facts. *See Spiller v. City of Texas City Police Dept.*, 130 F.3d 165, 167 (5th Cir. 1997).

Here, Plaintiff's allegations are factually insufficient to prove County liability under § 1983. Plaintiff alleges it had become customary at the Jail for medical personnel to ignore the medical needs of inmates and that this caused his injuries on the night of February 20. Plaintiff's evidence of this consists only of the fact that Jail medical staff placed him in a top bunk despite his history of seizures and denied him pain medication after his injuries. Plaintiff does not provide the specific dates he did not receive pain medication, but medical records show he did not receive pain medication as scheduled

7

on two days. Plaintiff also alleges it was customary for the Jail to not clean the infirmary, relying solely on the fact he suffered two Staph infections during recovery. Even if Jakobe could prove these instances violated his constitutional rights to medical care and safe conditions of confinement, the instances amount only to isolated violations, which do not establish a pattern of similar incidents required to show the existence of a county policy or custom. *See Piotrowski v. City of Houston*, 237 F.3d 567, 581 (5th Cir. 2001) (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)). Moreover, although the Plaintiff has alleged that (1) the Jail's medical personnel were acting in accordance with custom when they allegedly violated his constitutional rights and (2) those customs were the product of the County's deliberate indifference, he has provided no facts in support of these allegations.

Because Plaintiff has failed to raise a genuine issue of material fact as to each essential element of municipal liability under § 1983, the Court does not find it necessary to consider whether there is a genuine issue of material fact as to whether (1) any Dallas County employee denied Jakobe of a constitutional right or (2) Jakobe suffered any injury proximately caused by such denial.

## **Recommendation**

The Court recommends that the District Court **GRANT** Defendant's Motion for Summary Judgment.

IT IS SO RECOMMENDED, September 23, 2010.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).